

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **RONNIE TERRELL and** § | | |
| **ANGELA TERRELL,** § | | |
| Plaintiffs, § | | |
| § | | |
| V. § | NO. 1:09-CV-506 | |
| § | | |
| **ACE EUROPEAN GROUP LIMITED,** § | | |
| **QUALITY CLAIMS SERVICES, INC.** § | | |
| **D/B/A QCS CLAIMS, INC.,** § | | |
| **AFFILIATED CLAIMS SERVICE, INC.,** § | | |
| **and WAYNE MULLINS,** § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER
RE PLAINTIFF'S MOTION TO REMAND**

This opinion addresses "Plaintiffs' Opposed Motion to Remand" this case to 163rd Judicial District Court, Orange County, Texas. Clerk's Doc. 9. Plaintiffs' motion presents only one issue: "[w]hether the court lacks subject matter jurisdiction over this lawsuit because Affiliated is a Texas resident and defeats diversity jurisdiction." Mot., p. 2.

I. **BACKGROUND**

Plaintiffs' premises located in Orange County, Texas, allegedly sustained damage as a result of Hurricane Ike, which struck southeast Texas in September, 2008. Plaintiffs' original petition

avers that defendant Ace European Group Limited (Ace) sold Plaintiffs a policy which insured the premises against loss caused by hurricane and wind damage. The petition further avers that Ace assigned Defendant Affiliated Claims Service, Inc. (Affiliated) to adjust Plaintiffs' claim.

## II. PROCEEDINGS

On June 2, 2009, Plaintiffs filed "Original Petition" (Pet.) (Clerk's Doc. 1) in the 163rd Judicial District Court, Orange County, Texas, alleging that Affiliated violated the Texas Insurance Code by engaging in unfair settlement practices (Pet., p. 5-7, 10-12), and Affiliated conspired with other Defendants to commit and committed common law fraud (*Id.*, p. 12-13).[1]

On July 6, 2009, Ace and Affiliated (Defendants) filed "Notice of Removal" (Notice) (Clerk's Doc. 1) to United States District Court. As grounds for removal, Defendants contend that the sole non-diverse Defendant, Affiliated, was "fraudulently or improperly joined" (Notice, p. 2); and the amount in controversy exceeds the jurisdictional requirement (Notice, p. 2).

## III. MOTION TO REMAND

Plaintiffs argue that removal was improper because they have a valid cause of action against Affiliated and because the original petition alleges sufficient facts to establish a cause of action against Affiliated. Mot., p. 3-4.

## IV. AUTHORITY OF THE MAGISTRATE JUDGE

This case is assigned to United States District Judge Marcia Crone. It was referred to the undersigned United States magistrate judge on July 6, 2009, pursuant to Title 28, United States Code, Section 636(a) and Appendix B of the Local Rules for the Eastern District of Texas. Because

---

[1] Because allegations against Defendants Ace, Quality Claims Service, Inc., and Mullins are not at issue in this motion, this report addresses only Plaintiffs' allegations against Defendant Affiliated.

magistrate judges cannot dispose of claims or defenses absent consent of all parties, the undersigned elects to follow a procedure established by this court in an earlier case.[2]

## V. ANALYSIS

Defendants bear the burden to prove that federal subject matter jurisdiction exists. *Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004) (citing *Pettinelli v. Danzig,* 644 F.2d 1160, 1162 (5th Cir.1981)). To prove that Plaintiffs improperly joined Affiliated to defeat federal jurisdiction, Defendants must prove that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

### A.     Legal Standards

Complete diversity of citizenship must exist between all plaintiffs and all defendants to establish federal subject matter jurisdiction. *See Strawbridge v. Curtiss*, 7 U.S. 267, 2 L. Ed. 435 (1806); *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992). Simply stated, "all the parties on one side must be citizens of the state in which the suit is brought, and all the parties on the other side must be citizens of some other state or states." *Louisville C. & C.R. Co. v. Letson,* 43 U.S. 497, 500 (1844). Only citizenship of properly joined parties can establish federal subject matter jurisdiction. *Smallwood*, 385 F.3d at 572.

---

[2] "When remand is *proper*, the undersigned submits a report with a recommendation for remand. By objecting pursuant to *Rule 72(b), Federal Rules of Civil Procedure*, a party opposing remand may secure *de novo* review by the district judge prior to remand. Conversely, when remand is *inappropriate*, the undersigned simply denies the motion. The unsuccessful movant may then appeal that order to the presiding district judge pursuant to *Rule 72(a)*." *First Baptist Church of Mauriceville v. GuideOne Mutual Insurance Company*, 2008 WL 4533729 (E. D. Tex. Sept. 29, 2008), at *1.

Title 28, United States Code, Section 1441(b) permits a defendant to remove an action to federal court based on diversity of citizenship.[3] "The party claiming federal subject matter jurisdiction has the burden of proving it exists." *Peoples Nat. Bank*, 362 F.3d at 336 (citing *Pettinelli v. Danzig,* 644 F.2d at 1162). Title 28, United States Code, Section 1447(c) authorizes motions to remand to the state court if the removal was defective.[4] When actual fraud in the pleadings is not an issue, a three-step analysis assists the court in determining whether federal jurisdiction is proper based on improper joinder of defendants:

  1. Does it Appear that Plaintiff Intended to Pursue Claims? . . .
  2. Does State Law Recognize the Cause of Action? . . .
  3. Does State Court Petition Allege Sufficient Facts?

*First Baptist Church of Mauriceville, Texas v. Guideone Mutual Insurance Co.*, 2008 WL 4533729 (E.D. Tex. Sept. 29, 2008), at *3-*4.

Regarding the second and third steps of the analysis outlined above, the removing party who claims improper joinder must prove that plaintiff's petition fails to establish a valid cause of action against the non-diverse party. *Smallwood*, 385 F.3d at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). The removing party will prevail upon proof "that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is

---

[3] "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*" Title 28, United States Code, Section 1441(b) (emphasis added).

[4] "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Title 28, United States Code, Section 1447(c).

no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 326 F.3d at 573.

"[T]he standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."[5] *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). "The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." *Campbell*, 509 F.3d at 669 (citing *Ross*, 344 F.3d at 462); *see Travis*, 326 F.3d at 648-49. The decision to pierce the pleadings is discretionary. *Smallwood*, 385 F.3d at 573; *see also McKee v. Kansas City Southern Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004); *Travis*, 326 F.3d at 649. The court may consider summary judgment-type evidence such as affidavits "to the extent that the factual allegations in . . . affidavit[s] clarify or amplify the claims actually alleged in the . . . petition." *Griggs v. State Farm Lloyd's*, 181 F.3d 694, 700 (5th Cir. 1999) (internal quotation marks omitted).

"[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 326 F.3d at 573. The court must determine whether plaintiff has set forth "specific actionable conduct" to support his claim against the non-diverse defendant. *Griggs*, 181 F.3d at

---

[5] Any defendant may move to dismiss under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, the court must decide whether the facts alleged, if true, would entitle plaintiff to some legal remedy. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). *See Kurth v. Gonzales*, 469 F. Supp. 2d 415, 421 (E.D. Tex. 2006); *see also Thomas v. Odis C. Norris*, 2009 WL 3856920, at *4 (E.D. Tex. Nov. 16, 2009).

699. "[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the *factual fit* between the plaintiff's allegations and the pleaded theory of recovery." *Griggs*, 181 F.3d at 701 (emphasis added). "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In re Katrina Canal Breaches Litigation,* 495 F.3d 191, 205 (5th Cir.2007) (quoting *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)), *cert. denied,* --- U.S. ----, 128 S.Ct. 1230, 170 L.Ed.2d 63 (2008).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. V. Twombly*, 550 U.S. at 555). The "mere hypothetical possibility that such an action could exist" is insufficient to establish a state law cause of action. *Id.*; *see Campbell*, 509 F.3d at 669. Conclusory allegations that a defendant violated the code – without asserting what the defendant said or did in violation of the code – fail to establish a factual fit between the defendant's conduct and alleged violations of law. *Bailey v. State Farm Lloyd's*, No. Civ. A. H-00-3638, 2001 WL 34106907, at *5 (S.D. Tex. Apr. 12, 2001). A "'near-verbatim recitation of portions of [unfair settlement practices specified in the Texas Insurance Code]' does not create a colorable claim against [a defendant] unless coupled with *facts* indicating the [defendant's] *individual* role in the alleged events." *Killion v. Allstate Texas Lloyds*, No. CA-C-03-442-H, 2004 WL 612843, at *5 (S.D. Tex. Feb. 25, 2004). Thus failure to demonstrate a "factual fit" results in a finding of improper joinder, and denial of a motion to remand to state court.

"In conducting this inquiry, the court 'must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff.'"

*Campbell*, 509 F.3d at 669 (citing *Ross*, 344 F.3d at 463 (quoting *Travis,* 326 F.3d at 649)); *see also B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 551 (5th Cir. 1981). Moreover, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor." *McKee*, 358 F.3d at 334 (citing *Travis*, 326 F.3d at 647).

**B.      Competing Arguments**

Plaintiffs argue that, under the Texas Insurance Code, Affiliated is a corporation in the business of insurance in Texas and can therefore be held liable under the Texas Insurance Code. Mot., p. 5. Plaintiff cites case law from state of Texas courts, U.S. district courts, and Court of Appeals for the Fifth Circuit of Texas in support of this view. Plaintiffs also argue that factual allegations in the original petition support causes of action against Defendants. Mot., p. 7-8. Plaintiffs' factual allegations are recited in this opinion's Appendix.

Defendants respond that Plaintiffs have no claim against Affiliated as a matter of law because "claims against independent adjusters are precluded under Texas law." Resp., p. 2. Defendants argue, even if adjusters can be held liable under the Texas Insurance Code, that "Ace retained Affiliated to hire someone to estimate the Plaintiffs' loss." Resp., p. 8. Thus, Ace argues, Affiliated is not an adjuster (Resp., p. 6) and "did not adjust the Plaintiffs' loss, or . . . . supervise or critique the work of Quality Claims Service. Instead, Affiliated acted in a purely ministerial capacity" (Resp., p. 7). Plaintiffs' claims that Affiliated misrepresented anything to Plaintiffs, Defendants argue, "are demonstrably false" and further that "Plaintiffs never identify a single misrepresentation with specificity, much less a material representation which would be required to bring a claim." Resp., p. 10. Defendants argue that the sole communication Affiliated had with Plaintiffs – one letter – contains "no representations, let alone material false representations,

regarding damage covered under the Policy, the reasons for particular settlement quotes or the existence/denial of coverage." Resp., p. 14. Defendants also argue that Plaintiffs' claim "that Affiliated failed to act in a timely manner under the Texas Prompt Payment of Claims Act . . . . is demonstrably false, as Plaintiffs' claim was paid within the time limits of that statute by Ace." Resp., p. 15.

Plaintiffs reply, citing sections (*see* Appendix) of their original petition that provide "a reasonable basis for the district court to predict that the Plaintiffs will be able to recover." Reply, p. 3. Defendants' argument that adjusters cannot be held liable under Texas law must fail, Plaintiffs argue, because "the Fifth Circuit has held that Texas law authorizes claims against insurance adjusters." Reply, p. 5. Plaintiffs further argue that because Affiliated is a corporation in the business of insurance, Affiliated can be held liable under the Texas Insurance Code. Reply, p. 5.

Defendants' sur-reply argues that Tom Beno's Affidavit (Affidavit) (Notice, Exh. 7) comprises uncontroverted evidence which "contest[s] the 'facts' plead by Plaintiffs." Sur-reply, p. 1. Defendants again argue that the Affidavit proves that "Affiliated did not act as adjuster and therefore could not be liable to Plaintiffs under the Texas Insurance Code. . . . [and that] Affiliated did not make any misrepresentations to Plaintiffs and could not have liability for such under the Texas Insurance Code." Sur-reply, p. 1-2. Defendants urge the court to pierce the pleadings and consider the Affidavit. Defendants argue that Plaintiffs' silence indicates their "unwilling[ness] to state, under oath, that Affiliated made any misrepresentations to them. . . . [and] that Affiliated adjusted their claim." Sur-reply, p. 3. Defendants' conclude that "Plaintiffs' failure to controvert Mr. Beno's Affidavit is fatal to their Motion to Remand the case." Sur-reply, p. 3.

C.  **Application**

   a.  *Did Plaintiffs intend to pursue claims against Affiliated?*

Several paragraphs of the Original Petition contend that Affiliated's actions constitute unfair settlement practices in violation of the Texas Insurance Code.  Pet., ¶ 22-26, 31, 41-45.  The Petition also alleges that Affiliated conspired to commit and committed common law fraud.  Pet., ¶ 46-49.  Plaintiffs clearly intended to pursue claims against Affiliated.

   b.  *Does state law recognize the asserted causes of action against Affiliated?*

Affiliated's role in the adjustment of Plaintiffs' claim lacks crystal clarity.  Plaintiffs aver that "Ace assigned . . . Affiliated . . . to adjust the claim."  Pet., ¶ 19.  Defendants aver that "Ace retained Affiliated to hire someone to estimate the Plaintiffs' loss."  Resp., p. 8.  Thus Defendants argue that Affiliated cannot be held liable under state law because Affiliated did not act as adjuster: "Affiliated did not investigate the Plaintiffs' loss. . . .  Affiliated did not adjust the Plaintiffs' loss . . . .  Affiliated acted in a purely ministerial capacity."  Resp., p. 7.  Defendants argue that Affiliated corresponded with Plaintiffs only once, and Defendants proffer that letter dated November 21, 2008, as proof of Affiliated's "purely ministerial capacity."  Resp., Exh. C.  The letter provides Plaintiffs a "property damage estimate" and informs Plaintiffs that Affiliated is "forwarding the available claim information and documentation to ACE."  Resp., Exh. C, p. 1.  Affiliated's letter advises Plaintiffs as follows:

> If you have additional damages or differences in prices, please submit a written bid for repairs *for our review and consideration.  A determination will be made* if a reinspection is necessary.

Resp., Exh. C., p. 2 (emphasis added).

The Texas Insurance Code defines an adjuster as "an individual who . . . investigates or adjusts losses on behalf of an insurer as an independent contractor or as an employee of . . . an independent contractor . . . [or] *supervises the handling of claims*." TEX. INS. CODE § 4101.001 (emphasis added). The letter states that Affiliated would weigh any counter-bid which Plaintiffs might proffer and would then decide whether to reinspect Plaintiffs' damages. Such actions are more than ministerial. Affiliated's letter to Plaintiffs, on its face, indicates that Affiliated supervised the handling of Plaintiffs' claim.

Defendants also argue that Plaintiffs have no claim against Affiliated as a matter of law because "[c]laims against independent adjusters are precluded under Texas law." Resp., p. 2. Defendants cite *Woodward v. Liberty Mutual*,[6] an unpublished recent decision from the United States District Court, Northern District of Texas, for their argument that "adjusters [a]re not 'persons' under the Texas Insurance Code and could have no liability under those provisions." Resp., p. 4. *Woodward* is distinguishable from the case at bar. Relying on the court's previous decision in *Bunting v. State Farm Lloyd's*[7], the court in *Woodward* held that the insurance company's independent *appraiser*, not *adjuster* as Defendants argue, is not liable to an insurance claimant. *Woodward*, 2009 WL 1904840, at *4. Moreover, the court makes clear that an appraiser, unlike an adjuster, is not engaged in the business of insurance because the work "does not require expertise in selling or servicing insurance policies. It requires only that he be an expert at assessing the value of personal and real property." *Id.*; *see also Hartford Lloyd's Ins. Co. v. Teachworth*, 898

---

[6] 2009 WL 1904840 (N.D. Tex. July 2, 2009).

[7] 1999 WL 134642 (N.D. Tex. Mar. 4, 1999). The court held that an independent appraiser is not engaged in the business of insurance and is therefore not liable to a claimant under the insurance contract, Texas Deceptive Trade Practices Act, or Texas Insurance Code.

F.2d 1058, 1062 (5th Cir. 1990) ("Appraisers typically conduct independent investigations and base their decisions on their own knowledge").

Defendants also cite *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695 (Tex. 1994), for the same proposition. Resp., p. 2. Defendants' reliance on *Natividad* is misplaced. The Texas Supreme Court held in *Natividad* that companies which have subcontracted with an insurance company's contractor to perform adjustment services do not owe claimants a duty of good faith and fair dealing "because they [are] not parties to a contract . . . giving rise to a 'special relationship.'" *Natividad*, 875 S.W.2d at 698. Parsing this holding, the Court of Appeals for the Fifth Circuit stated:

> *Natividad*'s holding was limited to *common law claims* alleging a violation of the duty of good faith and fair dealing. . . . [T]he court never addressed whether the duty under Article 21.21 was delegable. . . . [*Natividad*'s] holding still does not bar [a plaintiff's] Article 21.21[8] claim . . . and *Garrison* explicitly authorizes it.

*Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 283 (5th Cir. 2007) (emphasis added). The Court further stated that "Texas law clearly authorizes Article 21.21 actions against insurance adjusters in their individual capacities." *Gasch*, 491 F.3d at 282 (citing *Liberty Mut. Ins. Co. V. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998)).

The inevitable conclusion is that the Texas Insurance Code recognizes a cause of action against companies such as Affiliated, whether Affiliated directly adjusted the claim or supervised the adjustment. Finally, Fifth Circuit precedent stated in *Gasch* is clear: an adjuster can be liable under the Texas Insurance Code.

---

[8] Article 21.21 is now codified in the Texas Insurance Code, Title 5, Chapter 541: Unfair Methods of Competition and Unfair or Deceptive Acts or Practices, which is the law at issue in the case at bar. *See* TEX. INS. CODE ANN., Title 5, Disposition Table (2009).

> c. *Does the state court petition allege sufficient facts to support a cause of action against Affiliated?*

To state a valid state law cause of action, Plaintiffs' Original Petition must demonstrate a "factual fit" between their allegations and the pleaded theory of recovery. *Griggs*, 181 F.3d at 701. Other courts have found such "factual fit" when a plaintiff's complaint ascribed specific conduct to the defendant, such as misrepresenting that a policy covers plumbing leaks and thereafter hiring a biased engineer[9]; misrepresenting that a policy provides 100 per cent coverage against mold damage[10]; misrepresenting that defendant was present at plaintiff's home to inspect mold damage and that mold damage did not exceed plaintiff's deductible[11]; and "fail[ing] to commission a reasonable engineering inspection and indoor air quality investigation of the Plaintiffs' home"[12]. Such "factual fit" is wholly lacking here.

Each of Plaintiffs' contentions regarding unfair settlement practice closely tracks language in § 541.060, Texas Insurance Code. *See* Appendix, *infra*, for comparison of Plaintiffs' contentions and Texas Insurance Code. Missing from Plaintiffs' contentions are specific factual allegations linking Defendants' conduct to the alleged wrongdoing. Plaintiffs do not state what Affiliated *said* or *did* in violation of Texas law. Unlike the fact patterns in previously cited cases (*see* notes 9-12, *supra*), Plaintiffs' allegations here amount to contentions that Affiliated violated the Texas Insurance Code without giving notice as to how Affiliated's words or actions comprise such violations.

---

[9] *Clark v. State Farm Lloyd's*, 2001 WL 1516762 (N.D. Tex. Nov. 26, 2001).

[10] *Hernden v. State Farm Lloyd's,* 2006 WL 870663 (W.D. Tex. Mar. 02, 2006).

[11] *Martin v. Chubb Lloyds Ins. Co. of Texas*, 2004 WL 2526425 (W.D. Tex, Oct. 21, 2004).

[12] *Killion v. Allstate Texas Lloyd's Co., et al.*, 2004 WL 612843, at *6 (S.D. Tex., Feb. 25, 2004).

Plaintiffs also fail to allege facts linking Defendants' conduct to allegations of common law fraud and conspiracy to commit fraud. Again, Plaintiffs fail to allege what Defendants said or did which indicates conspiracy or fraud against Plaintiff.

To bolster their argument that Plaintiffs have stated no claim against Affiliated, Defendants proffer the sworn Affidavit (Affidavit) of Tom Beno, who is "the owner of Affiliated Claims Service, Inc." Notice, Clerk's Doc. 1, Exh. 7, p. 1. The court may consider summary-judgment type evidence, such as affidavits. *Griggs*, 181 F.3d at 700. The Affidavit avers that Affiliated had no contractual relationship with Plaintiffs; did not adjust their claim, visit their property, or even speak with Plaintiffs; did not advise Plaintiffs regarding their rights under the policy or determine whether any coverage exclusions apply to their claim. *Id.* Beno's Affidavit states that Affiliated's role was "to relay the findings of Quality Claims Services, Inc., which were not subjectively reviewed by Affiliated." *Id.*, p. 1-2. Beno's Affidavit further states that any contact Affiliated had with Plaintiffs "with respect to their claim was ministerial in nature, including receiving and recording information supplied by [Plaintiffs] and third parties." *Id.*, p. 2. Significantly, Plaintiffs offer no argument against Beno's Affidavit and thus fail to controvert any statements therein.

In sum, this case presents no "factual fit" as required by precedent set forth in *Griggs,* which could provide the court a reasonable basis to find that Plaintiffs could sustain a cause of action against Defendants in state court. This result is consistent with previous opinions of this court:

> [A] controlling state court petition that successfully alleges a recognized cause of action but fails to also allege facts giving notice of *how* the defendant's conduct gives rise to the asserted liability lacks the required specificity. Identifying only what law forms the basis of the complaint, without identifying how a defendant violated that law, proves only that there is a theoretical possibility that a

cause of action *could* be stated against the defendant, not that the plaintiff *did* state a cause of action.

*First Baptist Church of Mauriceville, Tex. v. GuideOne Mutual Ins. Co.*, 2008 WL 4533729, at *4 (E.D. Tex. Sept. 29, 2008) (citing *Griggs*, 181 F.3d at 701).

**D.     Result**

Ace successfully demonstrates that Plaintiffs' state court petition provides "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 326 F.3d at 573. Affiliated was improperly joined in this lawsuit. Ace's removal of this case to federal court was proper.

### VI.  CONCLUSION

Plaintiffs' motion to remand fails.

### VII.  ORDER

"Plaintiffs' Opposed Motion to Remand" (Clerk's Doc. 9) is hereby **DENIED**.

**SIGNED this the 23rd day of February, 2010.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE

# APPENDIX

Plaintiffs argue that the following paragraphs of the Original Petition establish sufficient factual basis to support a cause of action in state court (Mot., p. 7-8):

The Texas Insurance Code, Unfair Settlement Practices, states:
"It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:" TEX. INS. CODE ANN. § 541.060(a).

The sections which Plaintiffs cite read as follows:

¶ 22  Affiliated . . . misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence (citing TEX. INS. CODE ANN. § 541.060(a)(1)).

"(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;" TEX. INS. CODE ANN. § 541.060(a)(1).

¶ 41  Affiliated's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair deceptive act or practice in the business of insurance (citing TEX. INS. CODE ANN. § 541.060(1)).

¶ 23  Affiliated . . . failed to make an attempt to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy (citing TEX. INS. CODE ANN. § 541.060(a)(2)(A)).

"(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
(A) a claim with respect to which the insurer's liability has become reasonably clear;" TEX. INS. CODE ANN. § 541.060(a)(2)(A).

¶ 42  Affiliated's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement

| | | |
|---|---|---|
| | of the claim, even though Defendants' liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance (citing TEX. INS. CODE ANN. § 541.060(2)(A)). | |
| ¶ 24 | Affiliated . . . failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement. Specifically, . . . Affiliated . . . failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being made. Furthermore, . . . Affiliated . . . did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim (citing TEX. INS. CODE ANN. § 541.060(a)(3)). | "(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;" TEX. INS. CODE ANN. § 541.060(a)(3). |
| ¶ 43 | Affiliated's unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for their offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance (citing TEX. INS. CODE ANN. § 541.060(a)(3)). | |
| ¶ 25 | Affiliated . . . failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time. Specifically, | "(4) failing within a reasonable time to: (A) affirm or deny coverage of a claim to a policyholder; or |

# APPENDIX

| | | |
|---|---|---|
| | Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from . . . Affiliated (citing TEX. INS. CODE ANN. § 541.060(a)(4)). | (B) submit a reservation of rights to a policyholder;" TEX. INS. CODE ANN. § 541.060(a)(4). |
| ¶ 44 | Affiliated's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance (citing TEX. INS. CODE ANN. § 541.060(a)(4)). | |
| ¶ 26 | Affiliated . . . refused to fully compensate Plaintiffs, under the terms of the Policy, even though . . . Affiliated . . . failed to conduct a reasonable investigation. Specifically, . . . Affiliated . . . performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiffs' losses on the property (citing TEX. INS. CODE ANN. § 541.060(a)(7)). | "(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim;" TEX. INS. CODE ANN. § 541.060(a)(7). |
| ¶ 45 | Affiliated's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance (citing TEX. INS. CODE ANN. § 541.060(a)(7)). | |

# APPENDIX

| | | |
|---|---|---|
| ¶ 31 | Affiliated . . . knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiffs. | [These paragraphs in Plaintiffs' petition allege common law fraud and conspiracy to commit fraud.] |
| ¶ 46 | Affiliated . . . [is] liable to Plaintiffs for common law fraud. | |
| ¶ 47 | Each and every one of the representations, as described above, concerned material facts for the reason Plaintiffs would not have acted and which . . . Affiliated . . . knew were false or made recklessly without any knowledge of their truth as a positive assertion. | |
| ¶ 48 | The statements were made with the intention that they should be acted upon by Plaintiffs, who in turn acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury and constituting common law fraud. | |
| ¶ 49 | Affiliated . . . [is] liable to Plaintiffs for conspiracy to commit fraud. . . . Affiliated . . . [was] a member of a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by unlawful means. In reaching a meeting of the minds regarding the course of action to be taken against Plaintiffs, . . . Affiliated . . . committed an unlawful, overt act to further the object or course of action. Plaintiffs suffered injury as a proximate result. | |